Not For Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Federal Trade Commission, | : | Civil Action No. 2:09-cv-141 (FSH)(MAS) |
| Plaintiff, | : | |
| v. | : | |
| | : | **OPINION & ORDER** |
| Dutchman Enterprises, LLC,  et al., | : | |
| Defendants. | : | |

**Magistrate Judge MICHAEL SHIPP**

This matter comes before the Court by way of two motions.  The Federal Trade Commission ("Plaintiff" or "FTC") brings a Motion to Compel Discovery Disclosures, Documents and Answers to Interrogatories against Defendant Dennis Lee ("Lee") as an individual, proceeding *pro se,* and as the president of unrepresented corporate Defendant Dutchman Enterprises, LLC ("Dutchman Enterprises") (collectively, "Defendants"). [1] (Docket Number ("Doc. No.") 73.)  Defendant Lee similarly moves to compel discovery disclosures, documents and answers to interrogatories with exhibits from Plaintiff.  (Doc. No. 75.)

## I.   STATEMENT OF FACTS

As the parties are well-versed in the facts surrounding this matter, the Court will address only those facts relevant to the motions currently pending before this Court.  This matter pertains to a claim filed by the FTC on January 12, 2009, alleging that Defendants engaged in deceptive

---

[1]   While a corporation may not appear before this Court without legal representation, because Defendant Lee is proceeding *pro se* and is the former president of Dutchman Enterprises, the Court will consider representations made by Lee on behalf of Dutchman Enterprises in making its decision.

marketing of their Hydro-Assist Fuel Cell kit ("HAFC"), in violation of 15 U.S.C. § 45(a).  (Doc. No. 1 ("Compl.") 2, 7.)  Defendants allegedly made false representations about the HAFC being able to significantly improve gas mileage by 50 to 261 percent.  (*Id.* at 3.)

The Plaintiff alleges that the Defendants have failed to comply with numerous discovery requests and deadlines.  (Doc. No. 73 ("Pl.'s Moving Br.") 4.)  As such, Plaintiff moves to compel Defendants to: (1) correct omissions in discovery disclosures and supplement disclosures; (2) turn over materials and evidence responsive to Plaintiff's requests; and (3) provide full and complete answers to relevant interrogatories.  (*Id.* at 3.)  Plaintiff asserts that it has made continual allowances for Defendants' *pro se* status, including two extensions of time to produce documents and numerous letters offering explanations of the nature of information and evidence that Defendants are required to produce under Federal Rule of Civil Procedure 26.  (*Id.* at 5.)  At the same time, Plaintiff points out that Lee was sanctioned for noncompliance with a discovery order in a Vermont case in which he was found to have violated the Vermont Consumer Fraud Act, as evidence that: (1) Lee is knowledgeable and experienced with the discovery process; and (2) Lee has a history of failing to cooperate in discovery and failing to meet Court-imposed deadlines.  (*Id.* at 6, citing *Vt. v. Lee*, 924 A.2d 81, 86-87 (Vt. 2007).)

Defendants claim they have complied with Plaintiff's discovery requests to the best of their ability, which they assert is limited due to their *pro se* status.  (Doc. No. 75-1 ("Defs.' Moving Br.") 3.)  Further, they allege that Plaintiff has been delinquent in its own discovery responsibilities, thereby resulting in Defendants' Motion to Compel.  (*Id.*)  In their Motion, Defendants request that this Court order Plaintiff to turn over all material documents and evidence that are responsive to Defendants' discovery request and to fully respond to admissions.  (*Id.*)

## II.   LEGAL STANDARD AND ANALYSIS

Under Federal Rule of Civil Procedure 26(b), upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. *Id.* "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* A party seeking to compel discovery need only establish the relevance of the information it seeks to give the Court discretion to order the opposing party to comply. *Jones v. DeRosa*, 238 F.R.D. 157, 164 (D.N.J. 2006). Stated differently, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). S*ee also Nestle Food Corp. v. Aetna Cas. & Surety Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

Since "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation" (*Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), discovery rules in general are given broad and liberal reading. *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 431 (D.N.J. 2003); *Tele-Radio Sys., Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). This is particularly true in a civil action, in which relevancy is to be construed liberally. *Williams v. Am. Cyanamid*, 164 F.R.D. 615, 616 (D.N.J. 1996). However, while its scope may be limited according to the facts and circumstances of the particular case, "the determination of relevance is within the Court's discretion." *Id.* Thus, while liberal, the scope of discovery is not boundless and may be properly narrowed in scope or limited to specific issues and topics that a court deems appropriate.

For instance, when the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Accordingly, a discovery request may be denied if this Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). The purpose of this rule of proportionality is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Bowers v. Nat'l Collegiate Athletic Ass'n.*, No. 97-2600, 2008 U.S. Dist. LEXIS 14944, at *15 (D.N.J. Feb. 27, 2008) (quoting *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989)).

### A. Plaintiff's Motion to Compel

#### (i)     Initial disclosures

Under Federal Rule of Civil Procedure 26(a)(1)(A), a party must, without awaiting a discovery request, provide to the other parties:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

The purpose of discovery and initial disclosures is to clarify the issues to be litigated and ascertain "facts, or information as to the existence or whereabouts of facts, relative to those issues . . . for parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman*, 329 U.S. at 501. As previously acknowledged by this Court,

4

> The purpose of voluntary disclosures is to streamline discovery and thereby avoid the practice of serving multiple, boilerplate interrogatories and document requests, which themselves bring into play a concomitant set of delays and costs. They also serve the purpose of preventing a party from improperly withholding relevant documents on the grounds that the opposing party has not specifically asked for them.

*Tarlton v. Cumberland Cnty. Corr. Facility*, 192 F.R.D. 165, 168 (D.N.J. 2000).

Plaintiff asserts that Defendants failed to: (1) properly disclose persons with discoverable information; (2) identify subjects of discoverable information that Defendants' employees, dealers or contractors are likely to possess; and (3) disclose all persons likely to have discoverable information on which Defendants may base claims or defenses. (Pl.'s Moving Br. 7.) Defendants, while acknowledging the deficiency of their initial disclosures, assert that they provided all of the documents that contain names and contact information of those individuals with discoverable information. (Doc. No. 77 ("Defs.' Opp'n Br.") 7.) Defendants state merely that they have been operating under "handicaps," and that they "considered it more important to respond to Plaintiff's requests for documents, Interrogatories and Request for Admissions." (*Id.*) As justification for failing to provide a list of persons with discoverable information, and merely indicating that such information is present in the documents turned over, Defendants claim that "Plaintiff has more resources available to them than does [sic] defendants." (*Id.*)

Rule 26(a)(1)(A) is clear. Parties are required to disclose names and contact information. Merely indicating that such are present in documents they have produced will not satisfy its purpose or requirements. "The goal of the initial disclosure requirement is to accelerate the exchange of basic information about the case." *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 588 (D.N.J. 1997) (internal quotations and citations omitted). The rule itself states, "a party is not excused from making its disclosures because it has not fully investigated the case . . . ." Fed. R. Civ. P. 26(a)(1)(E). "This district does not take compliance with Rule 26(a) lightly." *Tarlton*, 192

F.R.D. at 168-169.   As such, Defendants' alleged time and resource handicaps resulting from their

*pro se* status (Defs.' Opp'n Br. 7) cannot relieve them of their obligations under the Rule.   While

Defendants may have produced numerous documents which include the information Plaintiff

seeks, under Rule 24(a), Defendants have an obligation to provide the specific initial disclosures

required by the Federal Rules of Civil Procedure.   It is not Plaintiff's responsibility to review

documents produced by the Defendants and conjecture what information, subjects and persons

Defendants may rely upon in building their defenses and/or counterclaims.   Accordingly, this

Court finds good cause to grant Plaintiff's motion to compel initial disclosures pursuant to Rule

26(a).   Defendants shall identify all subjects of discoverable information, persons with

discoverable information and persons with information on which the Defendants may base claims

and defenses, as required under Federal Rule of Civil Procedure 26(a).

      **(ii)**      **<u>Material Evidence</u>**

      Based on the legal standard addressed above and this Court's liberal approach to

discovery and disclosure during pre-trial proceedings, absent a showing that the resulting burden

outweighs any benefit, this Court now addresses the remainder of Plaintiff's motion to compel.

      **a.**   *Road Tests & Chassis Dynamometer Test*

      Plaintiff asserts that Defendants have been deficient in complying with its requests for

relevant documents.   Plaintiff seeks to compel the Defendants to produce "any and all documents

and communications relating to testing or demonstrations of the HAFC."   (Pl.'s Moving Br. 7.)

Plaintiff believes Defendants performed a chassis dynamometer test, but Defendants have

produced no data about such a test.   (*Id.* at 8.)   The Defendants acknowledge that such a test was

performed, but claim not to have saved any data regarding same.   (Defs.' Opp'n Br. 10.)

Plaintiff asserts that such documents are relevant because they will provide evidence about the efficacy of the kit, as well as any fraud committed by the Defendants. (Pl.'s Moving Br. 8.)

Defendants do not offer clarification, explanation or support for their objections to producing these documents. In response to Plaintiff's motion to compel testing documentation, Defendants disavow any awareness of any tests they have not turned over to Plaintiff. (Defs.' Opp'n Br. 8.) However, Defendants then say, "we are sure there are hundreds more [road tests] to be found. Most of them have been favorable and some of them have not been." (*Id.*) It appears that Defendants have only turned over those testing documents that they have found in the course of an incomplete review of their documents. (*Id.*) In fact, throughout their opposition brief, Defendants note that they have found it difficult to preserve and review records and they have not completed a final review of all documents in their possession. (*Id.* at 11.)

Here, because this case revolves around whether or not Defendants made deceptive claims as to the kit's efficacy, this Court finds that test results which the Defendants do have in their possession are certainly relevant and must be turned over to the Plaintiff. Moreover, Defendants have not produced all documentation they have in their possession pertaining to testing as Plaintiff requested. (*See id.* at 8.) The Court thus orders Defendants to do a complete review of their records and to produce whatever documentation of testing they possess, whether road tests or chassis dynamometer tests. If Defendants do not possess any more documentation, Defendants shall provide a sworn affidavit certifying that fact. The sworn affidavit shall also certify that the chassis dynamometer test and other tests were performed, summarizing any and all information relevant to same tests, including information related to the test results. To the extent Plaintiff deems it necessary, Plaintiff may file a motion *in limine* at the appropriate time to

seek an adverse inference, spoliation of evidence and/or seek any other relief Plaintiff deems appropriate.

### b. *NBC News Report*

Next, Plaintiff seeks to compel documents or communications referring to the NBC News report, which Plaintiff believes "will likely contain admissions relevant to this case." (Pl.'s Moving Br. 10.) Defendants object, but fail to offer any clarification, explanation or support for their objections. Instead, Defendants claim there was no documentation or any response to the NBC News report whatsoever. (*Id.*) However, Defendants indicate once again that their ability to keep and review their records has been severely curtailed. (*Id.*)

Here, based on Defendants' continuous assertion that they have been unable to review all of their documents and records due to the fact that they are proceeding *pro se*, this Court's finds that Defendants have an obligation to review all requested documents and records in its possession, regardless of their alleged limited resources. Thus, this Court finds good cause to require that Defendants perform a full search of their records and produce any documentation they have about the NBC News report or to certify the lack thereof. If Defendants provide a sworn affidavit certifying that they do not have any documents related to the NBC News report in their possession, then Defendants shall be precluded from introducing any such documentation during the trial proceedings.

### c. *Audio Recordings*

Additionally, the FTC seeks to compel the production of any audio recordings of potential trial witnesses in Defendants' possession. (*Id.* at 12.) Plaintiff initially requested all audio recordings that relate "to the creation, development, marketing, promotion, offering for sale, or sale of the HAFC." (*Id.*) After Defendants objected that this request was overly broad, Plaintiff limited

the scope of the request to potential trial witnesses. (*Id.*)  Plaintiff believes this request is likely to lead to the discovery of admissible evidence and that the Defendants failure to comply with the more narrowly tailored request prejudices its ability to prepare for depositions.  (*Id.*)

Defendants claim that they are trying to review the audio tapes Plaintiff seeks as quickly as possible, but indicate that even the narrowed request for recordings of trial witnesses is highly burdensome.  (*Id.* at 13.)

Here, Defendants' mere statement that Plaintiff's request is "overly burdensome," without more, does not constitute an adequate objection to a discovery request.  *See Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 386 (D.N.J. 2006).  Nonetheless, given the Defendants' *pro se* status (Defs.' Opp'n Br. 13), the Court will broker a compromise between the parties. Where documents or other evidence can only be obtained through a time-consuming manual search that would be as burdensome for the Defendants as for the Plaintiff, the court may instruct the requesting party to perform the search.  *Quinn v. Kent Gen. Hosp., Inc.*, 617 F. Supp. 1226, 1246 (D. Del. 1985).  Therefore, rather than reviewing the audio tapes themselves, Defendants are ordered to turn over to Plaintiff all audio recordings in their possession, so that Plaintiff may review them under the Defendants' directions.

### d.  *Documents Regarding Defendants' Expert Witnesses*

Finally, Plaintiff seeks to compel production of documents concerning Defendants' expert witnesses. (Pl.'s Moving Br. 10.)  Plaintiff's Document Request 22 seeks "all documents and communications provided to, or received from, each person whom the defendants have identified or presented as an expert witness . . . ." (*Id.* at Ex. G. 11.)  Request 21 seeks materials relating to Defendants' experts' retention agreements. (*Id.*)  Parties are required under Rule 26(a)(2)(B) to provide complete disclosure regarding expert witnesses, including witnesses'

qualifications, their opinions, the data and information on which the experts relied in forming

those opinions and a statement of the experts' compensation. *See, e.g., Reed v. Binder*, 165

F.R.D. 424, 430 (D.N.J. 1996).

Defendants assert that they "certainly have produced all documents to date they have

concerning their expert witnesses" and aver that "there were no written retention agreements

with either of the two outside expert witnesses . . . ." (Defs.' Opp'n Br., Ex. G. 11.)  However,

Plaintiff asserts that Defendants admitted that they had not contacted former counsel to request

any engagement letters or retention agreements exist.  (Pl.'s Moving Br. 11, n.9.)  Given the

explicit requirements of Rule 26(a) regarding expert witnesses, the Defendants must provide all

responsive documents that concern experts who have testified or who will testify on their behalf.

Furthermore, Defendants must contact their former counsel to request any engagement letters or

retention agreements in his possession.  To the extent that counsel or Defendants wish to assert

the attorney client privilege or work product doctrine over those documents, this Court will

address those claims as they arise.

      (iii)    **Material Interrogatories**

Written interrogatories are intended to ensure mutual knowledge of all the relevant facts

before trial. *Ritepoint Co. v. Sec'y Pen Co.*, 94 F. Supp. 457, 458 (D.N.J. 1950).  In general,

when dealing with disputes over interrogatories, "if the answer might serve some legitimate

purpose, either in leading to evidence or in narrowing the issues, and to require it would not

unduly burden or prejudice the interrogated party, the court should require answer." *Microtron*

*Corp. v. Minn. Mining & Mfg. Co.*, 269 F. Supp. 22, 25 (D.N.J. 1967) (citing 4 Moore's Federal

Practice, 2d Edition 2354).   Importantly, the Court has discretion to determine what constitutes a

satisfactory response to an interrogatory. *W. Elec. Co. v. Stern*, 544 F.2d 1196, 1199 (3d Cir.

1976).  As such, this Court may either determine that the answers provided were satisfactory or require supplemental answers as it deems necessary.

In the instant matter, Plaintiff asserts that Defendants' answers to three different interrogatories have been deficient.  Based on the foregoing standard, the Court shall address each interrogatory individually.

### a. *Interrogatory 18*

In Interrogatory 18, Plaintiff asks Defendants to explain the admission in their answer to the complaint that "some of the marketing materials are not completely accurate depictions of what the HAFC technology does."  (Pl.'s Moving Br. 13.)  Defendants assert that the inaccuracy referenced in their answer to the complaint involved a specific technical aspect of how the HAFC works.  (Def.'s Opp'n Br. 14.)  In their answer to Plaintiff's Interrogatory 18, Defendants indicate that Defendant Lee stated in sales literature that magnets ionized gasoline, when their function is rather to break surface tension and lower the boiling point of gasoline.  (Pl.'s Moving Br., Ex. L 8.)

Based on the evidence before this Court and for good cause shown, this Court finds that Defendants' response to Interrogatory 18 is sufficient.  While Defendants' answer to Interrogatory 18 has some extraneous information and contains Defendants' opinion that the inaccuracy was not a material one, it does provide an answer clarifying what it meant when it said "[s]ome of the marketing materials are not completely accurate depictions of what the [HAFC] technology does." (*Id.* at Ex. K 8.)  As such, the Court is satisfied with Defendants' answer to Interrogatory 18.  Plaintiff's request for a revised answer is denied without prejudice.

### b. *Interrogatory 22*

Next, the Plaintiff indicates that Defendants' response to Interrogatory 22, which seeks the identity of the individuals who owned Defendant Dutchman during the period it sold the HAFC kit,

is deficient.  Defendants claim, as grounds for refusal, that the owners are "persons with a very

minimal financial involvement . . . in a LIMITED LIABILITY entity, who signed Power of Attorney

over to [Defendant Lee] and had NO involvement in the affairs of the entity . . . ." (Defs.' Opp'n Br.

16.)  Defendants additionally refuse to provide the requested information because they seek to

"protect [Dutchman's owners'] reputations in their respective communities." (*Id.*)  However, the

Court finds that this information is relevant to Plaintiff's case and may lead to admissible evidence

because the owners of the company, even if shielded from legal liability, are still likely to have

discoverable information.  Thus, the information Plaintiff seeks must be disclosed.

The Court notes that Defendants failed to request a protective order to protect the

Dutchman owners' reputations.  Nonetheless, this Court is permitted to use its discretion to enter

a protective order upon a finding of good cause.  *See* Fed. R. Civ. P. 26(c); *Smith v. Bic Corp.*,

869 F.2d 194, 199 (3d Cir. 1989).  However, "[b]road allegations of harm, unsubstantiated by

specific examples or articulated reasoning" do not justify an order of protection.  *Cipollone v.*

*Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  Thus, based on the evidence and facts

set forth in the relevant moving papers and Defendants' failure to request entry of protective

order, this Court finds that Defendants' broad statement that reputations may be harmed is

unsubstantiated by any "specific examples or articulated reasoning."  As such, entry of a

protective order at this point in time is unwarranted.  Therefore, Defendants' response to

Interrogatory 22 stands deficient and Defendants are ordered to provide more complete answers.

### c. *Interrogatories 2, 5 and 9*

Finally, Plaintiff alleges that Defendants' have failed to provide the dates of when they

first made claims about the efficacy of the kit and when they obtained documents that they rely

upon for substantiation of those claims.  Plaintiff's Interrogatory 9 asks Defendants to "[d]isclose

the specific date on which each defendant first obtained each document or communication relied upon . . . as substantiation for its claims for the HAFC." (Pl.'s Moving Br., Ex. K 7.) Interrogatory 2 seeks the date on which Defendants first claimed that the HAFC kit substantially increased gas mileage, and Interrogatory 5 seeks the date that Defendants first claimed that scientific tests substantiated those claims. (*Id.* at Ex. M 9, 15.)

As an initial matter, this Court finds that the requested dates are relevant, as the information may be necessary for statute of limitations, defenses, authentication purposes and the like. Moreover, this Court finds that Defendants' answers to Plaintiff's Interrogatories 2, 5 and 9 are deficient, as Defendants answered the interrogatories in general terms. (*See* Defs.' Opp'n Br. 15.) Specifically, Defendants did not provide the date that they obtained testing on which they based the claim that the kit substantially increased gas mileage. Rather, Defendants provided some general timeframes for the stages in which the HAFC was sold and additional information about an alleged contract with Ford Motor Company. (*See id.* at 16.) As such, Defendants are ordered to provide the date on which they first made claims about the efficacy of the HAFC kit. Further, for each and every document or communication upon which Defendants have relied or may rely on for substantiation of their HAFC claims, Defendants are ordered to provide Plaintiff with the specific dates on which those documents or communications were first obtained.

This Court finds that Defendants have had more than a sufficient amount of time to locate any necessary documents and should have supplemented their answers by now. This is a 2009 matter and the Court entered a scheduling order in October 2009 (Doc. No. 69), whereby Defendants were instructed to answer interrogatories by December 16, 2009. As such, this Court will require Defendants to provide an amended answer to Plaintiff's Interrogatories 2, 5 and 9 in an expeditious manner.

**B.** <u>Defendants' Motion to Compel</u>

The Court now turns to Defendants' Motion to Compel Discovery Disclosures, Documents and Answers to Interrogatories with Exhibits. Defendants allege that Plaintiff was deficient in complying with discovery because it: (1) failed to properly answer interrogatories; (2) failed to provide documents; and (3) failed to properly respond to Defendants' request for admissions. The Court will address each of these categories below.

**(i)** <u>Interrogatories</u>

Defendants claim that while Plaintiff has answered the majority of Defendants' interrogatories satisfactorily, Plaintiff "has failed to identify what initiated the case against defendants and who were the original complainants. Defendant [Lee] believes he has a right to know who his accusers were." (Defs.' Moving Br. 4.) Defendants do not offer any arguments in support of this claim and fail to identify the specific interrogatory for which they seek an answer. However, the Court will assume Defendants refer to Interrogatory 1, which provides: "Did anyone suggest that the FTC investigate Dutchman Enterprises or Dennis Lee? If so, whom, and did you document the conversation?" (Doc. No. 76 ("Pl.'s Opp'n Br."), Ex. D 4.)

Plaintiff objected to Interrogatory 1 claiming that the question sought privileged information, which is protected by the deliberative process doctrine and/or attorney client privilege. (*Id.*) The response further stated that the "identities of complainants and the contents of their complaints are disclosed in the FTC's production of documents and materials in response to Defendant[s'] document demands (e.g., FTC1319-22, FTC2501-96, FTC2786-93)." (*Id.* at 5.)

Based on the limited information before it, this Court finds that Defendants' motion does not make out a sufficient basis to support entry of an order requiring Plaintiff to supplement its answer to Defendants' Interrogatory 1. If this Court is correct in assuming that Defendants seek

an additional response from Plaintiff regarding Interrogatory 1, it appears that Plaintiff's response was sufficient, insofar as the information is identifiable in the discovery Plaintiff has already produced.  However, this Court does not make any findings as to whether the information may be protected under the deliberative process doctrine or attorney client privilege. Additional information would be necessary to make such an assessment, but is unnecessary for the purpose of assessing whether Plaintiff's response to Interrogatory 1 is sufficient.

**(ii)**      **Document Requests**

As previously stated, discovery at the pretrial proceedings stage is broad and parties may obtain discovery that is relevant to any claims or defenses, which is likely to lead to admissible evidence.  Fed. R. Civ. P. 26(b)(1).  However, discovery may be limited by this Court for several reasons, including application of the work product doctrine, as codified under the Federal Rules of Civil Procedure or where "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C).  The Court analyzes Defendants' motion to compel production of documents under this legal standard.

The purpose of the work-product privilege is to safeguard an attorney's work product from disclosure to an adversary or opponent.  *In re Grand Jury (Impounded)*, 138 F3d 978, 981 (3d Cir. 1998).  "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ." *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).  Under Federal Rule of Civil Procedure 26(b)(3), the work product doctrine shields the disclosure of certain documents "prepared in anticipation of litigation or for trial by or for another party or its representative."  Disclosure of attorney work-product may be permitted if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship,

obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  However,

even then, the court "must protect against disclosure of the mental impressions, conclusions,

opinions, or legal theories of a party's attorney or other representative concerning the litigation."

*Id.* at R. 26(b)(3)(B); *The Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, No. 03-6026,

2005 U.S. Dist. LEXIS 34624, at *12 (D.N.J. May 3, 2005).

### a. *Document Request 7*

Under Document Request 7, Defendants seek to compel production of "[a] copy of any

deposition or record of conversation with Bill Hummer[, a former affiliate of Dutchman LLC]."

(Pl.'s Opp'n Br., Ex. F 11.)  Plaintiff objected to this request, asserting that such documents were

protected by the work product doctrine.  (*Id.*)  Plaintiff argues that "attorney notes related to a

conversation plaintiff's counsel had with . . . William Hummer" are work product because they

contain their "attorney's mental impressions and analysis." (*Id.*)  As required, Plaintiff's

privilege log properly indicates that transcripts of depositions, and records of conversations with

Mr. Hummer contain the attorney's "mental impressions and analysis," and expressly asserts

work-product privilege over them. Fed. R. Civ. P. 26(b)(5). Plaintiff also states that "no

deposition, recording, or copy of any conversation with William Hummer is within plaintiff's

possession or control."  (*Id.*)

Here, this Court finds that documents which include Plaintiff's attorney's notes written in

anticipation of this litigation are protected by the work-product doctrine.  Defendants have not

demonstrated good cause as to warrant a finding that the doctrine has been waived or that the

information sought cannot be obtained by other means of discovery.  However, to the extent that

Plaintiff possesses responsive documents that are not protected by the work product doctrine

because they were not prepared in anticipation of litigation, or where Plaintiff has waived that

privilege by disclosing documents to third parties who are not Plaintiff's agents or representatives, the FTC shall produce such responsive documents to Defendants.

### b. *Document Request 10*

Defendants' Document Request number ten seeks: "[a]ll communications to/from third parties identified above in Sections I.F, I.G. and I.H (Nos. 2, 3, 7, 9, 10, 11.) and attachments of the FTC's Amended Initial Disclosures." (Pl.'s Opp'n Br., Ex. F 14.) Defendants object to Plaintiffs claim of law enforcement privilege, asserting that the privilege is inapplicable in civil cases. (Def.'s Moving Br. 4.) Defendants argue that, because Plaintiff has been unable to provide legal support for its privilege assertion and has only directed Defendants to one book that may contain an answer that Defendants have been unable to research, this Court should compel Plaintiff to produce the responsive documents.

However, Defendants failed to submit a copy of their document request with their moving papers and the copy included in Plaintiff's Opposition Brief does not include "Sections I.F, I.G. and I.H (Nos. 2, 3, 7, 9, 10, 11)" or any "attachments of the FTC's Amended Initial Disclosures" from which this Court can identify the third parties to which Defendants refer. (*Id.*) Defendants' omission of the material to which their request number ten refers has left the meaning of this request vague. Indeed, they have not properly set out which documents they would have this Court order Plaintiff to produce. As such, this Court will not issue such an order.

### c. *Document Request 20*

Defendants' Document Request 20 seeks: "[r]ecordings of the defendant's installer support teleconferences disseminated on the Internet which the FTC is relying on in their case against defendants." (Pl.'s Opp'n Br., Ex. F 27.) Plaintiff objects that this request is unduly burdensome and duplicative because these documents were originally recorded by Defendants

17

and Defendants have not claimed that their own originals are missing, unavailable or damaged. (Pl.'s Opp'n Br. 11.)  According to Defendants, Plaintiff has responded that it is still in the process of reviewing the recordings and has suggested that Defendants provide it with a list of recordings they seek.  (Defs.' Moving Br. 4.)  Defendants note that this request will "require Defendant to go through hundreds of hours to identify the specific recordings requested."  (*Id.*)

Defendants' reply brief does not clarify whether Defendants are still in possession of the recordings that they seek from Plaintiff.  (Doc. No. 81 ("Defs.' Reply Br.") 5.)  As Rule 26(b)(2)(C) requires the Court to limit discovery that is duplicative, it is not appropriate for the Court to order Plaintiff to turn over recordings that Defendants already possess.  Accordingly, Defendants shall advise Plaintiff as to whether the recordings are in their possession.  To the extent that the recordings are in Plaintiff's sole possession and Plaintiff intends to rely upon them in bringing its case against Defendants, Plaintiff is ordered to review all recordings and provide copies of those recordings responsive to Defendants' request.

### (iii)    Request for Admissions

Under Federal Rule of Civil Procedure 36(a)(1), "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)."  In answering a request for admission,

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

18

Notably, "[t]he purpose of [a request for admission] is to narrow the issues for trial to those which are genuinely contested." *United Coal Cos.*, 839 F.2d at 967. As such, where "issues in dispute are requested to be admitted, a denial is a perfectly reasonable response . . . [and] the use of only the word 'denied' is often sufficient." *Id.* In fact, "[a] request for an admission, except in a most unusual circumstance, should be such that it could be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why he cannot answer, such as in the case of privilege." *Id.* at 968 (quoting *Johnstone v. Cronlund,* 25 F.R.D. 42, 46 (E.D. Pa. 1960)). In this way, a request for an admission differs from an interrogatory, because a party serves interrogatories for the purpose of "ascertaining facts and procuring evidence or securing information as to where pertinent evidence exists." 23 Am. Jur. 2d Depositions and Discovery § 117. Further, even if a request for an admission might otherwise be susceptible to a simple response, such as "admitted" or "denied," a party will not be required to respond where the question is vague or terms are not clearly defined. *Williamson v. Corr. Med. Servs.*, No. 06-379, 2009 U.S. Dist. LEXIS 41438, at *10 (D. Del. May 14, 2009).

Defendants allege that Plaintiff has not properly responded to a substantial number of their request for admissions. Their misunderstanding of what constitutes a sufficient response to a request for admission seems to be the reason why they allege that so many of Plaintiff's responses are insufficient. For example, request for admission number four reads: "Admit that Eric Krieg complained to the FTC about or brought the FTC's attention to Dennis Lee or the HAFC or Dutchman Enterprises, prior to this case being brought." (Defs.' Moving Br., Ex. E 5-6.) Plaintiff denied the request. Defendants argue that they "should receive a straight answer regarding this important piece of information. Defendant Lee is confused by the answer of the Plaintiff and is merely asking him to clarify it." (*Id.* at 5-6.)

19

It is clear from this statement that Defendants are seeking the kind of response that would be required if this question were posed as an interrogatory.  However, the simple "denied" provided by the Plaintiff suffices when a party requests an admission.  *United Coal Cos.*, 839 F.2d at 967.  In responding to Defendants' request for admission numbers nine, ten, fifteen, sixteen, twenty-three, thirty-two, forty-two, forty-four, sixty-two and seventy-three the Plaintiff included the phrase "plaintiff denies the request."  (Defs.' Moving Br., Ex. E 10-11, 14, 19, 25, 33-35, 46, 54.)  The FTC denied several other requests with similar wording, employing "plaintiff denies this request" for request for admission number twenty (*Id.* at 17-18), "plaintiff . . . denies the request" for request for admission numbers twelve and forty-five (*Id.* a 12, 36) and "the balance of the request is denied" for request for admission number seventy-one.  (*Id.* at 53.) As all of these denials are a sufficient response for a request to admit, it is inappropriate to order Plaintiff to respond again to Defendants' request for admission numbers nine to ten, twelve, fifteen to sixteen, twenty, twenty-three, thirty-two, thirty-nine, forty-two, forty-four to forty-five, sixty-two, seventy-one and seventy-three.

Plaintiff does not deny Mr. Lee's request for admission numbers thirty-four or thirty-five. Rather, Plaintiff admits request for admission number thirty-five in part and "declines to admit or deny" request for admission number thirty-four and the remainder of request for admission number thirty-five based on its objections.  Plaintiff objects to both requests, in part, on the grounds that each "request is ambiguous to the extent that it employs a pseudoscientific term, 'Brown's gas,' which the defendant has failed to define." (Pl.'s Moving Br., Ex. E 28.)

The term "Brown's gas" is not listed in *A Dictionary of Chemistry*, 5th ed., (Oxford Univ. Press 2004).  As such, whether or not the term "Brown's gas" is pseudoscientific, there is no way for Plaintiff to know to what substance Defendants are referring in request for admission number

thirty-four and thirty-five. Thus, the Court will not require Plaintiff to answer this question

because the undefined term renders the question vague.

Thus, based on the aforementioned, this Court finds that Plaintiff's answers to

Defendants' request for admissions are sufficient.

### III.   CONCLUSION

For the reasons stated above, it is on this 2nd day of August, 2010,

**ORDERED** that:

1. Plaintiff Federal Trade Commission's Motion to Compel is GRANTED in part and

   DENIED in part without prejudice.

2. Defendant Dennis Lee's Motion to Compel is GRANTED in part and DENIED in

   part without prejudice.

3. By **8/30/10** Defendant Dennis Lee shall produce the following documents to Plaintiff:

   a. all disclosures required by Federal Rule of Civil Procedure 26(a)(1)(A),
      specifically "the name and, if known, the address and telephone number of each
      individual likely to have discoverable information — along with the subjects of
      that information — that [Mr. Lee] may use to support [his] claims or defenses,
      unless the use would be solely for impeachment;"

   b. all materials requested by the FTC in document request number fifteen, which
      reads in part: "[a]ny and all documents and communications relating to testing or
      demonstrations (including any proposed, incomplete, failed, or aborted testing or
      demonstrations)" (Pl.'s Moving Br. Ex. G 10 ¶ 15.);

   c. either the data from the dynamometer tests that Mr. Hocanson claims were
      performed on the HAFC or a sworn certification for the reason why this data
      cannot be provided;

   d. all materials requested by the FTC in document request number twenty-eight,
      specifically any material related to the NBC News investigation. Request twenty-
      eight reads in part: "[a]ny and all documents and communications relating to
      complaints or investigations concerning the defendants, the HAFC, or any
      promotional material or claims for the HAFC"(*Id.* at Ex. G 13 ¶ 28.); or a sworn
      certification for the reason this data cannot be provided;

    e.  all audio recordings in the Defendants' possession and directions to the Plaintiff regarding their review.

    f.  all documents Defendants posses that concern experts who have testified, or who will testify on their behalf, and any engagement letters or retention agreements obtained from Defendants' former counsel.

    g.  answers, under oath, to the following interrogatories:

        i.  "[i]dentify all current and past owners of corporate defendant(s), and the size of each owner's ownership interest(s)" (*Id.* at Ex. K 33 ¶ 22);

        ii.  "[d]isclose the specific date on which each defendant first claimed that the HAFC kit substantially increases gas mileage, including from 50% to 261%." (*Id.* at Ex M 9 ¶ 2.);

        iii.  "[d]isclose the specific date on which each defendant first claimed that scientific tests prove that the HAFC increases gas mileage between 50% and 261%." (*Id.* at Ex M 15 ¶ 5)

        iv.  give "the specific date on which each defendant first obtained each document or communication relied upon by the defendants as substantiation for its claims for the HAFC." (*Id.* at Ex K. 7 ¶ 9.)

4.  By **8/30/10**, Plaintiff shall provide to Defendants:

    a.  any documents responsive to Plaintiff's Document Request 7 that are not protected by the work product doctrine either because they were not prepared in anticipation of litigation or because that privilege has been waived by disclosure to third parties who are not agents or representatives of the Plaintiff.

    b.  copies of all "[r]ecordings of the defendant's installer support teleconferences disseminated on the Internet" on which Plaintiff plans to rely that are in the Plaintiff's sole possession. (Pl.'s Opp'n Br., Ex. F 14.)

5.  Failure to comply with this Order may result in sanctions.


                                     s/ Michael A. Shipp
                                **HONORABLE MICHAEL A. SHIPP**
                                  **United States Magistrate Judge**